IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CT-3184-BO

| | | |
|---|---|---|
| QUAMAINE LEE MASSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAMESE VIGUS and JAMIE L. BULLARD, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [D.E. 68]. The matter is also before the court on plaintiff's motion for relief [D.E. 89]. For the reasons set forth below, the court grants defendants' motion for summary judgment and denies plaintiff's motion as moot.

## STATEMENT OF THE CASE

On May 27, 2020, Quamaine Lee Massey ("Massey" or "plaintiff"), a state inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 [D.E. 1]. On December 3, 2020, the court granted plaintiff's motion to amend, conducted its frivolity review of the complaint, and allowed the action to proceed [D.E. 10]. On June 6, 2022, defendants filed a motion for summary judgment [D.E. 68]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadline. See [D.E. 72, 78]. On August 25, 2022, plaintiff responded in opposition to defendants' motion [D.E. 84]. On January 6, 2023, plaintiff filed a motion for relief [D.E. 89].

## STATEMENT OF THE FACTS

The allegations of plaintiff's complaint arose at Tabor Correctional Institution ("Tabor"). See Pl.'s Stmt. Mat. Facts ("Pl.'s SMF") [D.E. 84] ¶ 1. On April 15, 2020, plaintiff attempted to assault two staff members at Tabor. See Defs.' Ex. E [D.E. 71-5] 1–7. On the same date, the incident was reported to defendant Unit Manager Jamese Vigus ("Vigus"). See Vigus Decl. [D.E. 71-3] ¶¶ 2, 9. Defendant Vigus discussed the incident with her supervisors and decided to place plaintiff on disruptive behavior procedures pursuant to Tabor's Standard Operating Procedures regarding Property Removal Procedures for Disruptive Offenders. See Vigus Decl. at ¶¶ 8, 11; Bullard Decl. [D.E. 71-4] ¶¶ 6–7; Defs.' Ex. F [D.E. 71-6] 1–4.

Tabor's Standard Operating Procedures regarding Property Removal Procedures for Disruptive Offenders applies to inmates that assault or attempt to assault staff, and is a behavior modification tool designed to maintain order. See Vigus Decl. at ¶ 6; Defs.' Ex. F at 1. Pursuant to the policy, the Unit Manager may authorize the removal of an inmate's state and personal property for up to 72 hours. See Vigus Decl. at ¶ 6; Defs.' Ex. F at 2–3. The inmates may earn back their property over time with improved behavior. See Vigus Decl. at ¶ 7; Defs.' Ex. F at 4. For example, after a minimum of three hours of improved behavior, an inmate may earn back his mattress, pillow, linens, washcloth, towel, and blanket. See Vigus Decl. at ¶ 7; Defs.' Ex. F at 4. When inmates are placed on disruptive procedures, they have a sink and toilet in their cell, but they are not allowed to have personal hygiene items in their cell. See Vigus Decl. at ¶ 8. The inmates are authorized to wash their hands before and after eating, and after using the toilet, but staff members have to give them the soap. See id. After a minimum of six hours of improved behavior, an inmate may earn back his personal hygiene items. See Vigus Decl. at ¶ 8; Defs.' Ex. F at 4.

In addition to placing plaintiff on disruptive procedures, defendant Vigus placed a steel safety box on plaintiff's door to keep him from gaining access to staff. See Vigus Decl. at ¶ 10. Defendant Vigus also discussed her decision to install a safety box on plaintiff's door with her supervisors. See Vigus Decl. at ¶ 11. Prison staff use safety boxes on inmates who have assaulted staff. See Vigus Decl. at ¶ 10. The safety box remains on an inmate's door until his behavior is corrected, and it does not hinder an inmate from cleaning his cell. See id.

On April 18, 2020, at approximately 8:30 a.m., plaintiff was removed from disruptive procedures and his property was returned to him. See Defs.' Ex. E at 5. Plaintiff contends his property was not returned to him until April 19, 2020, at approximately 6:00 p.m. See Pl.'s SMF at ¶ 16. Plaintiff also contends he had to "sleep in a[n] empty filthy cell without [his] mattress, pillow, linens, washcloth, towel nor hygiene [and he] suffered for over 72 hours." Pl.'s SMF at ¶ 1. Plaintiff contends defendants Vigus and Jamie L. Bullard ("Bullard"), the Warden at Tabor, failed to comply with the disruptive behavior procedures because they did not return his property incrementally even though his behavior was improved. See Pl.'s SMF at ¶¶ 1, 9–10. Plaintiff contends there was "no reason for defendant Vigus to put a steel box on [his] cell door where [he] couldn't use the mop or broom." Pl.'s SMF at ¶ 12. Plaintiff alleges defendants deprived him of his basic human needs for approximately 72 hours in violation of his Eighth Amendment rights. See Pl.'s SMF at ¶¶ 4–5, 9, 14.

## DISCUSSION

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine

issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248–49. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378, 380 (2007)

To establish a prima facie claim that prison conditions violate the Eighth Amendment, a plaintiff must show "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (quotation and alterations omitted); see Farmer v. Brennan, 511 U.S. 825, 834 (1994); Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). The objective prong requires the prisoner to show that "the deprivation of [a] basic human need was objectively sufficiently serious." Strickler, 989 F.2d at 1379 (emphasis and quotation omitted); see Scinto, 841 F.3d at 225. "Only an extreme deprivation, that is, a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." De'lonta, 708 F.3d at 525 (quotation omitted); see Scinto, 841 F.3d at 225.

4

The subjective prong requires the prisoner to show that the prison official acted with deliberate indifference to the inmate's health or safety. See, e.g., Farmer, 511 U.S. at 834–40; De'lonta, 708 F.3d at 525; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Strickler, 989 F.2d at 1379. Although "deliberate indifference entails something more than mere negligence. . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. See id. at 837; De'lonta, 708 F.3d at 525. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Makdessi v. Fields, 789 F.3d 126, 133–34 (4th Cir. 2015). "It is not enough that the [prison official] should have recognized" the objectively serious condition, medical need, or risk of harm. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (emphasis omitted). Rather, a plaintiff must prove "actual knowledge of the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis omitted). A prisoner's failure to give warning of, or protest exposure to, the risk does not conclusively show that a prison official lacked actual knowledge. See Makdessi, 789 F.3d at 134. However, "[a] prison official's subjective actual knowledge can be proven through circumstantial evidence." Id. at 133. "[A]n injury might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it." Id.

Beyond such actual knowledge, the prison official "must also have recognized that his actions were insufficient to mitigate" the objectively serious condition, medical need, or risk of harm. Iko, 535 F.3d at 241 (quotation and emphasis omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments

5

Clause . . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); see Wilson v. Seiter, 501 U.S. 294, 298–99 (1991). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241.

Even viewing the record in the light most favorable to plaintiff, plaintiff has failed to demonstrate a genuine issue of material fact concerning whether defendants were deliberately indifferent to his health or safety by temporarily removing his property and placing a safety box on his cell door for approximately 72 hours. See, e.g., Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); Tart v. Vigus, No. 5:19-CT-03204-BO, 2022 WL 2078727, at *5 (E.D.N.C. June 9, 2022) (unpublished); Fuller v. Honeycutt, No. 1:21-cv-00348-MR, 2022 WL 19791, at *4 (W.D.N.C. Jan. 3, 2022) (unpublished); Wise v. Jefferson, No. 6:21-cv-02713-JD-KFM, 2021 WL 6773027, at *4 (D.S.C. Dec. 22, 2021) (unpublished), report and recommendation adopted, 2022 WL 298159 (D.S.C. Feb. 1, 2022) (unpublished); McNeill v. Britt, No. 1:18CV800, 2021 WL 3711702, at *10 (M.D.N.C. July 21, 2021) (unpublished); Wagner v. Warden, No. ELH–14–791, 2015 WL 1276749, at *41 (D. Md. Mar. 19, 2015) (unpublished); Thompson v. Patterson, No. 9:10–2381–HFF–BM, 2011 WL 5024344, at *4–6 (D.S.C. July 14, 2011) (unpublished), report and recommendation adopted, 2011 WL 5024303 (D.S.C. Oct. 20, 2011) (unpublished). To the extent plaintiff alleges defendants failed to comply with the disruptive behavior procedures, a violation of a prison policy that does not result in a constitutional violation does not create a viable claim under section 1983. See, e.g., Danser v. Stansberry, 772 F.3d 340, 348 (4th Cir. 2014); Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished). Thus, the court grants defendants' motion for summary judgment.

Case 5:20-ct-03184-BO   Document 90   Filed 03/23/23   Page 6 of 7

## CONCLUSION

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 68]. The court DENIES AS MOOT plaintiff's motion for relief [D.E. 89]. The court DIRECTS the clerk to close the case.

SO ORDERED. This 23 day of March, 2023.

*Terrence W. Boyle*
TERRENCE W. BOYLE
United States District Judge